## THE WAVERLY.

### (District Court, E. D. Wisconsin. January 11, 1897.)

1. **SALVAGE—EXTENT OF RISK—STATE OF WEATHER.**

   The extent of the risk assumed in undertaking to tow a disabled vessel is not to be gauged by the results alone; and the fact that the towing line was speedily taken, and that no mishap occurred, is entitled to consideration only so far as it tends to show the state of the wind and sea.

2. **SAME—COMPENSATION.**

   Fifteen hundred dollars allowed, upon a valuation of $67,000, to a steamer and cargo, worth $75,000, which, in threatening weather, at some risk, took in tow and brought to port a disabled propeller found in Lake Michigan, some 20 miles from the west shore, off the port of Milwaukee.

This was a libel by the North Michigan Transportation Company, owners of the propeller Charlevoix, against the propeller Waverly, to recover salvage for the services of the Charlevoix in taking in tow and conveying into port the Waverly, which was found disabled in Lake Michigan.

Markham, Nickerson & Harper, for libelant.

Schuyler & Kremer, for claimant.

SEAMAN, District Judge. There is no material conflict upon the determining facts in this case, aside from the allegation of the distance of the Waverly from Chicago, and from the west shore, when picked up by the Charlevoix; and in that regard I find no practical difficulty, as both the course of the Waverly prior to the accident, and the time occupied by the tow in approaching the west shore, concur in placing the location approximately 20 miles off that shore; and, from the course taken and the lights sighted after the tow commenced, it is apparent that the start was from a point about east of the port of Milwaukee. The Waverly was a freight steamer, and left Chicago on the morning of September 17, 1893, bound for Buffalo, with a cargo of 47,000 bushels of corn, and two schooners in tow. At about 7 p. m. a break occurred in the machinery of the steamer, by which, as described by the engineer, "the engine went through herself," and was completely disabled. The schooners were then released, proceeding under sail, and the steamer blew her signals of distress while the engineer was engaged in disconnecting the shaft. The steamer Charlevoix, carrying 60 passengers and a cargo of general merchandise and fruit, was on her trip from Northport to Chicago; and the signals being heard on their starboard bow, about a mile and a half away, answering signals were given, and she came up promptly within hailing distance. Although there are minor differences in the testimony of what was then said by the masters, respectively, all agree that assistance was called for, and that the matter of compensation was to be left to the owners for settlement. The Waverly rolled somewhat in the troughs of the sea, which was running from the southward. There was no storm, according to seamen's parlance. The libel avers only "a lump of a sea," and the

mate of the Charlevoix says a 10-mile breeze was blowing from the south.  The master of the Waverly says "the wind was about southeast, a nice breeze," but that it was what "sailors would call threatening weather."  The disabled steamer was not, perhaps, in imminent peril from the present state of the weather; but it is asserted that an unfavorable change of the weather, with the wind west or northwest, was indicated by the barometer, and in that event the sole dependence of this steamer for making a port of shelter or anchorage was upon a small foresail and mainsail,—conditions in which disaster might well be apprehended.  On the other hand, there was sufficient sea to require care and skill, and involve some extent of risk to the Charlevoix in maneuvering to take the line, and in towing with the short line improvised for the purpose, the wind having increased and hauled to the west,—certainly more risk than would be incurred in her regular voyage.  The extent of the risk which was assumed by the salvor is not to be gauged by the results alone, and the argument of the respondent to that end, upon the fact that the line was speedily taken, and that no mishap occurred, is entitled to consideration only so far as it tends to show the state of wind and sea.  This service was rendered by a passenger steamer upon the urgent call of a disabled steamer.  It was voluntary, prompt, and effective, and under circumstances which constitute salvage of the minor order, but not mere towage.  The rules stated in the case of The Spokane, 67 Fed. 254, are clearly applicable here, the only differences being of degree,—the salved property here being about one-fifth the value there, and the service there being at the close of the season of navigation, and with greater distance and difficulties. The value of the Waverly and cargo is stipulated at $67,000, and of the Charlevoix and cargo at $75,000.  The claimants tendered $500, and it is urged in their behalf that such amount would be liberal compensation, and the allowance should be no larger; but the purposes of the rule of salvage which grants compensation in the nature of a reward would not be fulfilled by narrowing the allowance so closely to the rate of mere towage, and I am satisfied that $1,500 may justly be awarded, under the circumstances shown.  Let the libelant have decree for that amount and costs.